## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| Hannah Hodges,<br><br>*Plaintiff,*<br><br>v.<br><br>University of Texas Southwestern<br>Medical School,<br>*in its official capacity*;<br>Angela Mihalic,<br>*in her official and individual capacity*;<br>Robert Rege,<br>*in his official and individual capacity*;<br>Aditee Ambardekar,<br>*in her official and individual capacity*;<br>Erin Sine,<br>*in her official and individual capacity*;<br>Jessica Spaniol,<br>*in her official and individual capacity*;<br>Daniel Podolsky,<br>*in his official and individual capacity*,<br><br>*Defendants*. | **CASE NO. 3:22-cv-02583**<br><br><br>**COMPLAINT**<br>**(1) Due Process Violation**<br>**(2) Title II of the ADA Violation**<br>**(3) Section 504 of the Rehab Act Violation**<br>**(4) Intentional Infliction of Emotional Distress**<br>**(5) Negligent Infliction of Emotional Distress**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

## I.     INTRODUCTION

This is an action arising from Plaintiff's wrongful dismissal from the University of Texas Southwestern Medical School. Plaintiff is seeking damages for Defendants' violation of Plaintiff's civil rights under the Due Process Clause, Title II of the

1

Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973. Defendants are also responsible for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress.

## II.    PARTIES

1. Hannah Hodges ("Plaintiff") was a student at UT Southwestern Medical School at all time material to this litigation.

2. Defendant University of Texas Southwestern Medical School ("UT Southwestern") is a public university based in Dallas, Texas.

3. Defendant Angela Mihalic ("Mihalic") was employed by UT Southwestern at all times relevant to this litigation.

4. Defendant Robert Rege ("Rege") was employed by UT Southwestern at all times relevant to this litigation.

5. Defendant Aditee Ambardekar ("Ambardekar") was employed by UT Southwestern at all times relevant to this litigation.

6. Defendant Erin Sine ("Sine") was employed by UT Southwestern at all times relevant to this litigation.

7. Defendant Jessica Spaniol ("Spaniol") was employed by UT Southwestern at all times relevant to this litigation.

8. Defendant Daniel Podolsky ("Podolsky") was employed by UT Southwestern at all times relevant to this litigation.

### III.   JURISDICTION & VENUE

9. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

10. In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims for Intentional and Negligent Infliction of Emotional Distress.

11. Defendant UT Southwestern conducts business in the state of Texas.

12. Individual Defendants on the grounds that they were employees of UT Southwestern at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Texas.

13. Venue in this action is properly in the Northern District of Texas because the events relevant to this action occurred primarily within the geographical confines of the Northern District of Texas.

## IV.   FACTUAL ALLEGATIONS

14. Plaintiff began her studies as a medical student at UT Southwestern in the Fall Semester 2021.

15. Plaintiff has been diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD"). Her disability prevents Plaintiff from being able to stay focused and affects her ability to attend to schoolwork.

16. Generally, medical students are provided a physician mentor for their first year of school, to help adapt with the stress of the workload and requirements of school.

17. Plaintiff's mentor became unavailable to the students early in the semester and UT Southwestern never provided a new mentor, leaving Plaintiff alone in figuring out the new stress of medical school.

18. On or around October 25, 2021, Plaintiff attended an anatomy lab.

19. Plaintiff had excelled in previous labs and was known to her professors and peers as a hard-working individual, eager to learn, and always treating cadavers with the necessary respect.

20. As she was observing her classmate perform cuts on the cadaver, Plaintiff's hands began mindlessly moving, a symptom of Plaintiff's ADHD.

21. At the time of the incident, Plaintiff's ADHD was not completely regulated due to her medication causing side effects, in particular gastrointestinal distress.

22. In the process, Plaintiff's hands cut an "H" and an unfinished "A" into a piece of fat of the cadaver.

23. In previous labs, Plaintiff had removed extra fat out of the dissection field to get a better view, which is a possible explanation for why she now subconsciously began to cut fat on the day in question as well.

24. Plaintiff does not recall these actions and did not realize the seriousness of what she had done. Therefore, Plaintiff failed to self-report.

25. Plaintiff's unawareness of what she had done is additionally evidenced by the fact that, while the piece of fat would have been easy to cut out and hide, she did not do so but instead left her doodling for others to find.

26. On November 1, 2021, Plaintiff and the rest of the class received an e-mail from Dr. Alisa Winkler and Dr. Janine Prange-Kiel about the letters carved into the cadaver.

27. This was the first time that Plaintiff realized what she had done. She responded to the e-mail immediately after her realization. Plaintiff at that time was unaware of what exactly she had carved into the fat, but took responsibility for her actions nevertheless.

28. On November 2, 2021, Plaintiff met with Defendant Mihalic to discuss the incident.

29. Defendant Mihalic had previously told a group of students that she uses Adderall, used to treat ADHD, as a performance enhancing drug that no one should take, regardless of whether they have ADHD or not.

30. Despite Defendant Mihalic's biased views, following the meeting, an emergency meeting request was placed by the Deans office for Plaintiff to immediately move up her psychiatrist appointment to receive help coping with her ADHD.

31. It was standard for students to wait one to two months to get in for services with the student mental health office of UT Southwestern Student Wellness and Counseling.

32. On November 2, 2021, Plaintiff sent an apology e-mail to all professors involved in the incident.

33. That same day, Plaintiff was informed by Defendant Mihalic that she was accused of violating EDU-151 Student Conduct and Discipline, as well as the Human Structure Course Policies and Laboratory Rules and Procedures.

34. Shortly thereafter, Plaintiff was put in touch with Dr. Blake Barker, another dean, who was intended to function as a third party. Despite this, Plaintiff

and her parents were denied answers to questions about the process following the charges.

35. Around the same time, Plaintiff attended a second meeting with Defendant Mihalic, expressing her remorse. Defendant Mihalic informed her that Plaintiff's treatment and sanctions were based on the fact that her instructors have not had a similar incident at UT Southwestern yet.

36. On November 3, 2021, Plaintiff attended her appointment with UT Southwestern psychiatrist Dr. Timothy Wolff, who stated that mindless hand-movements are consistent with the untreated ADHD Plaintiff was living with at the time of the incident.

37. On November 4, 2021, Plaintiff again showed her remorse to her professors and again stated how her ADHD had negatively impacted her during the incident.

38. On November 6, 2021, again did so in an e-mail to Defendant Mihalic.

39. On November 4, 2021, Plaintiff's lab partners, Wesley Thompson and Maria Mejia, called Defendant Mihalic to reiterate that they did not believe Plaintiff's actions to have been intentional, and that Plaintiff had never treated a cadaver disrespectfully in the past.

40. On November 8, 2021, Defendant Mihalic proposed Plaintiff's expulsion from UT Southwestern through a Notice of Disciplinary Action.

41. Defendant Mihalic had previously wrongfully expelled a student, for which she was demoted to co-dean rather than sole dean.

42. On December 6, 2021, a student disciplinary hearing was held regarding the accusations against Plaintiff.

43. The hearing panel was composed of Defendants Rege, Ambardekar, Sine, and Spaniol.

44. UT Southwestern's internal policy for such hearings provides that the decision shall "be based on the totality of the evidence."[1]

45. On December 17, Plaintiff was informed that the hearing panel had found her in violation of EDU-151 and confirmed her penalty of expulsion. The letter did not mention that Plaintiff suffers from ADHD.

46. On December 31, 2021, Plaintiff appealed her expulsion to Defendant Podolsky.

47. On January 20, 2022, her appeal was denied, and the penalty of expulsion was upheld.

48. On March 29, 2022, Defendants were informed of possible impending litigation.

---

[1] UT Southwestern Policy Handbook, *EDU-151)-01 Procedures for Student Discipline* (2016), p. 3.

**Respondaet Superior and Agency**

49. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

50. Under Federal and Texas law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

51. At all times relevant to this action, all individual Defendants were employed by UT Southwestern. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment with UT Southwestern.

52. At the time of this Complaint, only the individual Defendants themselves are aware of the exact role that each individual Defendant played in the events that are the subject of the lawsuit. For this reason, only the individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

## V.    CAUSES OF ACTION

## COUNT I – VIOLATION OF DUE PROCESS UNDER 42 U.S.C. § 1983

53. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

54. The Fourteenth Amendment of the U.S. Constitution provides, in pertinent part, that "no person shall be deprived of life, liberty, or property without due process of law."

55. Plaintiff has a constitutionally protected and clearly established property interest in continuing her education at UT Southwestern. Plaintiff and Defendant UT Southwestern entered into a contract by which Defendant UT Southwestern offered admission to Plaintiff on specified terms.

56. Plaintiff accepted Defendant's offer and attended UT Southwestern as a student.

57. There was a mutual exchange of consideration for which Plaintiff attended UT Southwestern involving payments and expenditure of time as well as UT Southwestern makings its services including educational opportunities available to Plaintiff, until Plaintiff would graduate.

58. Plaintiff therefore had a property interest in her continued education at UT Southwestern which would only terminate upon attaining her degree.

59. Plaintiff has a constitutionally protected and clearly established liberty interest. "The Due Process Clause . . . forbids arbitrary deprivations of liberty. Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, the minimal requirements of the Clause must be satisfied." *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (internal citation and quotations omitted). An expulsion from UT Southwestern is detrimental to Plaintiff's good name and reputation, as it will be communicated to Plaintiff's future academic programs and employers.

60. Given the immense gravity of a potential expulsion, Plaintiff's constitutionally protected liberty and property interests were directly threatened by the outcome of the December 6 hearing. The Defendants were therefore constitutionally required to ensure that the hearing was conducted in a fair and impartial manner. Accordingly, Defendants were, at a minimum, constitutionally required to adhere to UT Southwestern's internal policy which provides that the decision shall "be based on the totality of the evidence."

61. Defendants Rege, Ambardekar, Sine, and Spaniol had direct participation in Plaintiff's case and the hearing and were responsible for ensuring that it was undertaken in a manner that was fair to Plaintiff.

62. These Defendants were responsible for ignoring Plaintiff's evidence of suffering from ADHD, as evidenced by the fact that her ADHD was mentioned

nowhere in the December 17 Hearing Decision Letter and was not discussed in the "Findings" section of the letter.

63. Additionally, Defendants' based their conclusion on the fact that they had not witnessed an incident like this before, thereby effectively comparing Plaintiff to students without a disability.

64. By finding the sanction of expulsion justified without a preponderance of all available evidence, Defendants Rege, Ambardekar, Sine, and Spaniol violated Plaintiff's due process rights.

65. By upholding the decision on appeal, Defendant Podolsky legitimized a decision that was made without a preponderance of all available evidence and thereby violated Plaintiff's due process rights.

66. Additionally, Plaintiff's questions about the process and next steps were often times left unanswered.

67. Defendants' due process violations have inflicted irreparable reputational damage to Plaintiff. Plaintiff's academic record will forever reflect the expulsion, which will therefore be communicated to all of Plaintiff's future academic programs and employers.

68. Defendants' due process violations have stripped Plaintiff of her property right into obtaining an education at UT Southwestern permanently.

69. Additionally, Defendants' have caused Plaintiff to suffer psychological and emotional suffering to the point of needing medical care.

70. Therefore, as a direct and proximate result of Defendants' actions or failures, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, as well as ordering all records related to her expulsion to be expunged and reinstating Plaintiff as a full-time student at UT Southwestern.

(c)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT II – VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

71. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

72. Defendant is a public university that receives federal funding and therefore is subject to Title II of the ADA.

73. Plaintiff suffers from a disability because of being diagnosed with ADHD.

74. Plaintiff's disability limits major aspects of her life, making many activities difficult for her, especially the ability to concentrate.

75. Despite her disabilities, Plaintiff was able to succeed in her classes and labs at UT Southwestern as observed by her professors and peers.

76. Plaintiff therefore is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

77. Title II of the ADA prohibits the discrimination of a person on the basis of disability.

78. Defendants' discriminated against Plaintiff through, including but not limited to:

a.  Denying Plaintiff the participation in UT Southwestern's educational program by expulsion based on Plaintiff's actions which were a symptom of her disability.

b.  Ignoring Plaintiff's evidence of her disability during the December 6 hearing.

c.  Ignoring Plaintiff's evidence of her disability in the December 17 Hearing Decision Letter.

d.  Ignoring Plaintiff's evidence of her disability during the appeal process.

79. Additionally, Defendants' based their conclusion on the fact that they had not witnessed an incident like this before, thereby effectively comparing Plaintiff to students without a disability.

80. Through the statements made by Plaintiff and her medical provider, Defendants were fully aware of Plaintiff's disability.

81. Defendants' discriminated against Plaintiff on the basis of her disability, as evidenced, amongst other things, by Defendant Mihalic's statements about ADHD and its treatment drug Adderall.

82. Defendants' inobservance of the law and its' effects on Plaintiff are ongoing and continuous, requiring declaratory and injunctive relief and therefore employing 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

83. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, as well as ordering all records related to her expulsion to be expunged and reinstating Plaintiff as a full-time student at UT Southwestern.

(c)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT III – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

84. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

85. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 bars all federal funded entities from discriminating based on disability. Section 504 states, in relevant part:

*No otherwise qualified individual with a disability in the United States . . .*
*shall, solely by reason of his or her disability, be excluded from the*
*participation in, be denied the benefits of, or be subjected to discrimination*
*under any program or activity conducted by any Executive agency or by the*
*United States Postal Service. 29 U.S.C. § 794(a).*

86. As a public school receiving federal funding, Defendant UT Southwestern is subject to Section 504 of the Rehabilitation Act.

87. Plaintiff is a disabled person who has been diagnosed with ADHD, which makes it hard for Plaintiff to concentrate in everyday life.

88. Despite her disabilities, Plaintiff was able to succeed in her classes and labs at UT Southwestern as observed by her professors and peers.

89. She was therefore an otherwise qualified individual to receive a degree from UT Southwestern. Plaintiff was denied her degree because of her ADHD.

90. Defendants' discriminated against Plaintiff through, including but not limited to:

a. Denying Plaintiff the participation in UT Southwestern's educational program by expulsion based on Plaintiff's actions which were a symptom of her disability.

b. Ignoring Plaintiff's evidence of her disability during the December 6 hearing.

c. Ignoring Plaintiff's evidence of her disability in the December 17 Hearing Decision Letter.

d.  Ignoring Plaintiff's evidence of her disability during the appeal process.

91. Additionally, Defendants' based their conclusion on the fact that they had not witnessed an incident like this before, thereby effectively comparing Plaintiff to students without a disability.

92. Through the statements made by Plaintiff and her medical provider, Defendants were fully aware of Plaintiff's disability.

93. Defendants' discriminated against Plaintiff on the basis of her disability, as evidenced, amongst other things, by Defendant Mihalic's statements about ADHD and its treatment drug Adderall.

94. As a result of Defendants' actions, Plaintiff was prevented from pursuing educational opportunities otherwise available to her.

95. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe emotional distress and has been derailed from pursuing her desired career path.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)     Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, as well as ordering all records related to her expulsion to be expunged and reinstating Plaintiff as a full-time student at UT Southwestern.

(c)     Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

97. Defendants committed all four elements of intentional infliction of emotional distress: Defendants acted with intent; Defendants' conduct was extreme and outrageous; Defendants' conduct caused the Plaintiff emotional distress; and Plaintiff's emotional distress was severe.

98. The individual Defendants purposefully ignored evidence of Plaintiff's ADHD, despite being informed of Plaintiff's disability multiple times.

99. Defendants' actions rose to the level of discrimination.

100. Defendants' actions violated UT Southwestern's policies.

101. Defendants' intentional actions caused Plaintiff emotional distress severe enough to require psychiatric care.

102. From the many conversations with Plaintiff, Defendants' knew that their actions would be injurious to Plaintiff.

103. Defendants' actions proximately caused Plaintiff emotional injuries.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, as well as ordering all records related to her expulsion to be expunged and reinstating Plaintiff as a full-time student at UT Southwestern.

(c)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

104. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

105. All four elements of negligent infliction of emotional distress are present: Defendants owed Plaintiff a duty of care, Defendants breached such duty of care, the breach of duty was a direct and proximate cause of Plaintiff's injuries, and Plaintiff sustained such injuries.

106. Defendants' owed Plaintiff a duty of care during the disciplinary proceedings as it was foreseeable that their determination would have great impact on Plaintiff's well-being

107. Defendants' breached their duty of care towards Plaintiff when they based their findings not on a preponderance of all the evidence.

108. As a result of Defendants' breach of duty, Plaintiff sustained emotional distress to the point of needing psychiatric care.

109. Defendants' actions rose to the level of discrimination.

110. Defendants' actions violated UT Southwestern's policies.

111. Defendants' actions proximately caused Plaintiff emotional injuries.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental

anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)     Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, as well as ordering all records related to her expulsion to be expunged and reinstating Plaintiff as a full-time student at UT Southwestern.

(c)     Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.


## VI.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.


Dated: November 16, 2022                Respectfully Submitted,

Keith Altman, Esq.
(*pro hac vice to be applied for*)
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com