## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **HANNAH HODGES,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 3:22-cv-02583-K** |
| | § | |
| **UNIVERSITY OF TEXAS** | § | |
| **SOUTHWESTERN MEDICAL** | § | |
| **SCHOOL, et al.,** | § | |
| *Defendants.* | § | |

---

## DEFENDANTS' RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

---

TO THE HONORABLE U.S. DISTRICT JUDGE ED KINKEADE:

Defendants The University of Texas Southwestern Medical School ("UTSW"), Angela Mihalic, Robert Rege, Aditee Ambardekar, Erin Sine, Jessica Spaniol, and Daniel Podolsky jointly file this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff's claims against the Official Defendants[1] are all barred by sovereign immunity or fail to state a claim as a matter of law. Plaintiff's claims against the Individual Defendants[2] are all barred by qualified immunity, official immunity, or attorney immunity. Accordingly, the Court should dismiss Plaintiff's claims.

---

[1] "Official Defendants" include UTSW and all the other Defendants insofar as they are sued in their official capacities.

[2] "Individual Defendants" include Angela Mihalic, Robert Rege, Aditee Ambardekar, Erin Sine, Jessica Spaniol, and Daniel Podolsky insofar as they are sued in their individual capacities.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ 2

TABLE OF AUTHORITIES ................................................................................. 3

BACKGROUND .................................................................................................. 6

STANDARD OF REVIEW .................................................................................. 6

    Rule 12(b)(1) ................................................................................................... 6

    Rule 12(b)(6) ................................................................................................... 7

ARGUMENT & AUTHORITIES ........................................................................ 8

    I.   Plaintiff's § 1983 claim is barred by sovereign and qualified immunity ........... 8

        A.  Plaintiff's § 1983 claim against UTSW is barred by sovereign immunity ..... 8

        B.  Plaintiff's § 1983 claim against the other Official Defendants is also barred by sovereign immunity ............................................................... 9

        C.  Plaintiff's § 1983 claim against the Individual Defendants is barred by qualified immunity ............................................................................. 13

    II.  Plaintiff has not pleaded a legally cognizable disability discrimination claim . 16

    III.  Plaintiff's tort claims are barred by sovereign and official immunity .............. 19

        A. Plaintiff's tort claims against the Official Defendants are barred by sovereign immunity ............................................................................... 19

        B. Plaintiff's tort claims against the Individual Defendants are barred by official immunity .................................................................................. 20

    IV.  Plaintiff's claims against Erin Sine and Jessica Spaniol are also barred by attorney immunity ................................................................................ 21

CONCLUSION & PRAYER .............................................................................. 22

CERTIFICATE OF SERVICE .......................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...................................................................................... 14, 15, 18
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 7, 13
*Brown v. Wilson Cnty.*,
  No. SA-97-CA-1473-OG, 1999 WL 33290666 (W.D. Tex. Mar. 31, 1999) ................ 20
*Bustillos v. El Paso Cty. Hosp. Dist.*,
  891 F.3d 214 (5th Cir. 2018) ............................................................................... 14, 18
*Cadena v. El Paso Cnty.*,
  946 F.3d 717 (5th Cir. 2020) ...................................................................................... 16
*Cantey Hanger, LLP v. Byrd*,
  467 S.W.3d 477 (Tex. 2015) ....................................................................................... 21
*Cantu v. Rocha*,
  77 F.3d 795 (5th Cir. 1996) ........................................................................................ 20
*Chrissy F. v. Miss. Dep't of Pub. Welfare*,
  925 F.2d 844 (5th Cir. 1991) ...................................................................................... 10
*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) .................................................................................... 9, 19
*City of Lancaster v. Chambers*,
  883 S.W.2d 650 (Tex. 1994) ....................................................................................... 20
*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
  960 F.3d 253 (5th Cir. 2020) ........................................................................................ 8
*DeHorney v. Talley*,
  630 S.W.3d 297 (Tex. App.—El Paso 2021, no pet.) ................................................. 19
*Doe v. Silsbee Indep. Sch. Dist.*,
  402 F. App'x 852 (5th Cir. 2010) ................................................................................ 12
*Doe v. Taylor Indep. Sch. Dist.*,
  15 F.3d 443 (5th Cir. 1994) ........................................................................................ 11
*Dupont v. Linden*,
  81 F.3d 155, 1996 WL 101418 (5th Cir. 1996) .......................................................... 20
*Eustice v. Tex. A&M Univ.*,
  Civil Action No. 4:15-CV-03180, 2016 WL 8710444 (S.D. Tex. Sept. 30, 2016) ....... 11
*Ex parte Young*,
  209 U.S. 123 (1908) ............................................................................................. 10, 13
*Fontenot v. McCraw*,
  777 F.3d 741 (5th Cir. 2015) ................................................................................. 10, 13
*Hamilton v. Sw. Bell Tel. Co.*,
  136 F.3d 1047 (5th Cir. 1998) ............................................................................... 17, 18
*Harkey v. NextGen Healthcare, Inc.*,
  No. 21-50132, 2022 WL 2764870 (5th Cir. July 15, 2022) ................................... 17, 18

*Jackson v. Sheriff of Ellis Cnty.*,
   154 F. Supp. 2d 917 (N.D. Tex. 2001) ........................................................... 19

*Kovacic v. Villarreal*,
   628 F.3d 209 (5th Cir. 2010) ........................................................................ 15

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .......................................................................... 8

*McClendon v. City of Columbia*,
   305 F.3d 314 (5th Cir. 2002) ........................................................................ 15

*Melton v. Dallas Area Rapid Transit*,
   391 F.3d 669 (5th Cir. 2004) ........................................................................ 16

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015) .................................................................................... 14

*Nottingham v. Richardson*,
   499 F. App'x 368 (5th Cir. 2012) ................................................................. 18

*Paterson v. Weinberger*,
   644 F.2d 521 (5th Cir. 1981) .......................................................................... 7

*Paul v. Davis*,
   424 U.S. 693 (1976) ...................................................................................... 12

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................................ 13, 14

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) .......................................................................................... 8

*Perez v. Tex. A & M Univ. at Corpus Christi*,
   589 F. App'x 244 (5th Cir. 2014) ................................................................. 12

*Pierce v. Hearne Indep. Sch. Dist.*,
   600 F. App'x 194 (5th Cir. 2015) ................................................................... 7

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005) ..................................................................... 7, 13

*Price v. Shorty*,
   632 F. App'x 211 (5th Cir. 2016) ................................................................... 9

*Quern v. Jordan*,
   440 U.S. 332 (1979) ........................................................................................ 9

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) .......................................................................... 6

*Seaman v. CSPH, Inc.*,
   179 F.3d 297 (5th Cir. 1999) ........................................................................ 18

*Smith v. Hood*,
   900 F.3d 180 (5th Cir. 2018) ........................................................................ 18

*Stauffer v. Gearhart*,
   741 F.3d 574 (5th Cir. 2014) ..................................................................... 9, 10

*Sullivan v. Leor Energy, LLC*,
   600 F.3d 542 (5th Cir. 2010) .......................................................................... 8

*Tex. A & M Univ. Sys. v. Koseoglu*,
   233 S.W.3d 835 (Tex. 2007) ........................................................................... 9

*Troice v. Greenberg Traurig, L.L.P.*,
   921 F.3d 501 (5th Cir. 2019) .................................................................21
*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) ...................................................................8
*Wernecke v. Garcia*,
   591 F.3d 386 (5th Cir. 2009) ...........................................................14, 15
*White v. Pauly*,
   137 S. Ct. 548 (2017) ..............................................................................14
*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ...............................................................................9, 10
*Wyatt v. Fletcher*,
   718 F.3d 496 (5th Cir. 2013) .................................................................14
*Zarnow v. City of Wichita Falls*,
   500 F.3d 401 (5th Cir. 2007) .................................................................14

**Statutes**

29 U.S.C. § 794(a) ........................................................................................16
42 U.S.C. § 12132 ........................................................................................16
42 U.S.C. § 1983 ....................................................................................passim
Tex. Civ. Prac. & Rem. Code § 101.021 .....................................................19
Tex. Civ. Prac. & Rem. Code § 101.025 .....................................................19
Tex. Civ. Prac. & Rem. Code § 101.057(2) .................................................19
Tex. Penal Code § 42.08...............................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(1)..........................................................................1, 6, 7
Fed. R. Civ. P. 12(b)(6)............................................................................1, 7
Fed. R. Evid. 201........................................................................................21

## BACKGROUND

As a first-year medical student, Plaintiff Hannah Hodges carved letters from her own name into a cadaver during a lab class.  ECF 1 ¶¶ 18, 22.  Her desecration of a cadaver violated basic ethical, professional, and UTSW standards.[3]  Accordingly, UTSW dismissed her from medical school.  *Id.* ¶¶ 40, 45, 47.  Plaintiff has now sued UTSW, its President, and numerous of its faculty members and attorneys.  Plaintiff pleads the following causes of action: (1) a due process violation under 42 U.S.C. § 1983; (2) disability discrimination under Title II of the Americans with Disabilities Act ("ADA"); (3) disability discrimination under Section 504 of the Rehabilitation Act of 1973; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.  As set forth below, each of those claims fails as a matter of law.

## STANDARD OF REVIEW

**Rule 12(b)(1):**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal where a court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A plaintiff has the burden to establish subject matter jurisdiction.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).  Sovereign immunity (as recognized by the Eleventh Amendment) deprives a court of jurisdiction and is thus properly raised in a motion to dismiss pursuant to Federal Rule of Civil

---

[3] She may have also committed a criminal offense: abuse of a corpse.  *See* Tex. Penal Code § 42.08.

Procedure 12(b)(1). *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 197 (5th Cir. 2015) (per curiam).

Under Rule 12(b)(1), a defendant may challenge a court's subject matter jurisdiction through a "facial attack" or a "factual attack." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Where, as here, a defendant challenges subject matter jurisdiction on the face of a complaint, the district court presumes the plaintiff's factual allegations to be true and determines whether those allegations are legally sufficient to establish jurisdiction. *See id.* Even if Plaintiff's factual allegations are assumed to be true (which Defendants do not admit), the Official Defendants are immune from most of Plaintiff's claims against them (the § 1983 claim and the state tort law claims) as a matter of law.

**Rule 12(b)(6):**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). The Court may also consider facts subject to judicial notice under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). On its face, Plaintiff's Original Complaint fails to plead a plausible claim for relief against the Official Defendants under the ADA and Rehabilitation Act or against the Individual Defendants under any legal theory.

## ARGUMENT & AUTHORITIES

**I.   Plaintiff's § 1983 claim is barred by sovereign and qualified immunity.**

**A.   Plaintiff's § 1983 claim against UTSW is barred by sovereign immunity.**

As recognized by the Eleventh Amendment, a state's sovereign immunity generally bars suit against a state in federal court. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). As "an instrumentality of the State of Texas," UTSW is entitled to the state's sovereign immunity. *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 260 (5th Cir. 2020). To overcome UTSW's sovereign immunity, Plaintiff must show that "the state has waived sovereign

immunity or Congress has expressly abrogated it." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).  Plaintiff cannot do so here.

The State of Texas (including its instrumentality UTSW) is not subject to suit under § 1983.  The express language of § 1983 permits suits against a "person."  *See* 42 U.S.C. § 1983.  It is well-established that a state is not a "person" subject to suit under § 1983.  *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (per curiam).  Accordingly, § 1983 does not abrogate the State's sovereign immunity.  *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *Price v. Shorty*, 632 F. App'x 211, 212 (5th Cir. 2016) (per curiam).  Further, Plaintiff cannot point to any Texas statute that waives the State's sovereign immunity against § 1983 claims.  *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so.").  Because sovereign immunity bars Plaintiff's § 1983 claim against UTSW, this Court should dismiss it.

**B.   Plaintiff's § 1983 claim against the other Official Defendants is also barred by sovereign immunity.**

As state employees sued in their official capacities, the rest of the Official Defendants (besides UTSW) are also protected by the same sovereign immunity held by the State of Texas.  *See, e.g.*, *City of Austin*, 943 F.3d at 997 ("The Supreme Court has recognized that sovereign immunity also prohibits suits against state officials or agencies that are effectively suits against a state.  In short, Eleventh Amendment immunity is not limited to cases in which states are named as defendants." (citations omitted)).  This means that these Official Defendants are not "persons" subject to suit

under § 1983. *See, e.g.*, *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."); *Stauffer*, 741 F.3d at 583 (affirming dismissal of claims for monetary damages against state employees sued in their official capacities because "[n]either a state nor a state official sued in an official capacity is a 'person' under § 1983"). Accordingly, Plaintiff's claims for damages are barred against all the Official Defendants, not just UTSW. *See, e.g.*, *Chrissy F. v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) ("The Eleventh Amendment bars claims for damages . . . when the claimant seeks damages from the State's officers in their official capacities and the damages would be paid out of the state treasury.").

To be sure, there is a narrow exception to sovereign immunity that permits a plaintiff to seek only prospective injunctive relief against a state official for an ongoing violation of federal law. *See, e.g.*, *Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015); *see also Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding there is no immunity for a state official who is sued in federal court by a plaintiff seeking injunctive relief against the enforcement of a state law that violates the U.S. Constitution). This *Ex parte Young* exception applies where a plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Fontenot*, 777 F.3d at 752. To the extent Plaintiff is suing the Official Defendants who are natural persons for prospective injunctive relief, her claim is still barred because she fails to satisfy the requirements of the *Ex parte Young* exception.

Specifically, Plaintiff has failed to plead an ongoing violation of federal law because she has not alleged a legally cognizable due process violation.

"To state a cause of action under § 1983 for violation of the Due Process Clause, [a plaintiff] must show that [she has] asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that [she was] intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (en banc) (internal quotation marks omitted).  Plaintiff's pleadings fail to show any of these required elements.

First, Plaintiff cannot meet the threshold requirement to show a constitutionally protected liberty or property interest.  Plaintiff alleges that (1) she had a constitutionally protected property interest in attending medical school at UTSW, and (2) she had a constitutionally protected liberty interest in her reputation. ECF 1 ¶¶ 55, 58–59.  Plaintiff provides no authority for the proposition that a medical school student (i.e., a professional graduate student) has a constitutionally protected property interest in attending medical school.  *See Eustice v. Tex. A&M Univ.*, Civil Action No. 4:15-CV-03180, 2016 WL 8710444, at *5 (S.D. Tex. Sept. 30, 2016) ("The Supreme Court has never addressed whether a university student has a protected liberty or property interest in post-high school education." (internal quotation marks omitted)).  Although the Fifth Circuit has sometimes assumed without deciding the existence of such an interest, *see id.*, Plaintiff has not pointed to any authority holding there is such an interest.  Further, Plaintiff does not have a protected interest in her

reputation. *See, e.g., Paul v. Davis*, 424 U.S. 693, 701 (1976) (expressly rejecting the proposition that "reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); *Doe v. Silsbee Indep. Sch. Dist.*, 402 F. App'x 852, 854 (5th Cir. 2010) (per curiam) (noting that "freedom from false stigmatization does not constitute a protected liberty interest under the Fourteenth Amendment").

Second, even if Plaintiff had a constitutionally protected interest in her medical education, none of the Official Defendants deprived her of that interest. "If a public university dismisses a student for disciplinary reasons, the student is not entitled to a formal hearing but instead to an informal give-and-take between the student and the administrative body dismissing [her] that would, at least, give the student the opportunity to characterize [her] conduct and put it in what [she] deems the proper context." *Perez v. Tex. A & M Univ. at Corpus Christi*, 589 F. App'x 244, 248–49 (5th Cir. 2014) (per curiam) (internal quotation marks omitted). As Plaintiff's own allegations show, she received exactly that—a full opportunity to characterize her conduct. *See* ECF ¶¶ 27–28, 32, 35, 37–40, 42, 46 (detailing numerous times that Plaintiff wrote and personally met with various UTSW authorities, characterizing her own actions for them).

Because Plaintiff cannot meet the legal standard for a due process claim, this Court need not interact further with the details of her various allegations. Even so, Defendants note that those allegations fall woefully short of showing any due process violation. For example, Plaintiff speculates that Defendants must have ignored her

claim that she had ADHD.  ECF 1 ¶ 62.  That conclusory allegation does not satisfy the federal pleading standard.  *See Iqbal*, 556 U.S. at 679; *Plotkin*, 407 F.3d at 696. Plaintiff also alleges that Defendants violated her rights by observing they had never witnessed a similar incident.  ECF 1 ¶ 63.  That allegation is beside the point because it merely demonstrates that *no one* else—including all the other medical students with and without ADHD who have attended UTSW—ever desecrated a cadaver as Plaintiff did.  It does not show Plaintiff was treated differently from students without ADHD.  Rather, it shows that Plaintiff acted differently from *every other medical student at UTSW* and was treated accordingly.

Because Plaintiff's own allegations fail to state a legally cognizable due process violation, she has not pleaded a violation of federal law, and the *Ex parte Young* exception does not apply.  *See Fontenot*, 777 F.3d at 752.  Thus, Plaintiff's § 1983 claim is completely barred by sovereign immunity, and this Court should dismiss it.

### C.  Plaintiff's § 1983 claim against the Individual Defendants is barred by qualified immunity.

When state employees are sued in their individual capacities for alleged violations of federal law, qualified immunity bars those suits whenever the employees' "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Id.* at 232.  "Once a public official raises the defense of qualified immunity, the burden rests

on the plaintiff to rebut it." *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

To overcome qualified immunity, Plaintiff must show "(1) that [each Individual Defendant] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  The Court has discretion to address either prong of the test first.  *See id.*; *Pearson*, 555 U.S. at 236.

As explained above, Plaintiff has completely failed to allege a legally cognizable due process violation.  *See supra* section I.B.  Accordingly, she has failed to overcome the Individual Defendants' qualified immunity under the first prong.

Plaintiff also fails the second prong of the qualified immunity test.  Under the "clearly established" prong, a state official is entitled to qualified immunity unless the law is sufficiently clear to put a reasonable actor on notice that her conduct is unlawful.  *See Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009).  Plaintiff bears the "burden to find a case in [her] favor that does not define the law at a 'high level of generality.'" *Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018). Any case offered by Plaintiff must demonstrate clearly established law in the "specific context of the case, not as a broad general proposition." *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) ("clearly established law should not be defined at a high level of generality," but instead "must be particularized to the facts of the case" (internal quotation marks omitted)); *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (to defeat qualified

immunity, there must be "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity"); *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002) (a court must "consider not only whether courts have recognized the *existence* of a particular constitutional right, but also . . . whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct").

Under this standard, Plaintiff bears the burden to prove that each Individual Defendant violated her "clearly established" constitutional right. *See Kovacic v. Villarreal*, 628 F.3d 209, 212 (5th Cir. 2010) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)). Plaintiff has not done so. Plaintiff has failed to point to any case law that would put a reasonable medical school faculty member on notice that dismissing a student who desecrates a cadaver, after permitting the student to explain her point of view multiple times, both in writing and in person, is somehow unlawful. *See Wernecke*, 591 F.3d at 393.

In short, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (cleaned up). On the face of Plaintiff's own allegations, none of the Individual Defendants was plainly incompetent, and none of them violated any law (although Plaintiff herself arguably

did by carving part of her name into a cadaver).  Thus, Plaintiff's § 1983 claim against the Individual Defendants is barred by qualified immunity.

## II. Plaintiff has not pleaded a legally cognizable disability discrimination claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Rehabilitation Act contains a similar prohibition.  *See* 29 U.S.C. § 794(a).  Because "[t]he remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA, . . . jurisprudence interpreting either section is applicable to both." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (cleaned up).  To establish a claim under either statute, a plaintiff must show the following elements:

(1) that [she] is a qualified individual within the meaning of the ADA;
(2) that [she] is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and
(3) that such exclusion, denial of benefits, or discrimination is by reason of [her] disability.

*Id.* (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)).[4]  Plaintiff has not alleged facts that satisfy the third element.

---

[4] There is a substantive difference between the causation standards applicable to an ADA claim and a Rehabilitation Act claim.  "Under the Rehabilitation Act, the exclusion must be solely by reason of [a plaintiff's] disability, where under Title II of the ADA, discrimination need not be the sole reason for the exclusion." *Cadena*, 946 F.3d at 723 n.1 (cleaned up).  Plaintiff's allegations fail to show either causation standard here.

Plaintiff alleges the reason she desecrated a cadaver by carving letters from her own name into it was that she had ADHD, and that her ADHD caused her to carve her name into the cadaver.  ECF 1 ¶¶ 15, 20–22.  Accordingly, she contends that by dismissing her for misconduct that was allegedly caused by ADHD, UTSW discriminated against Plaintiff by reason of a disability.  *Id.* ¶¶ 78(a), 90(a).  Under well-established law, that is legally insufficient to show a disability discrimination claim.

The Fifth Circuit recently reaffirmed its distinction between a defendant who acts *because of a plaintiff's disability* and a defendant who acts *because of a plaintiff's conduct* allegedly caused by that disability.  *Harkey v. NextGen Healthcare, Inc.*, No. 21-50132, 2022 WL 2764870, at *4 (5th Cir. July 15, 2022) (per curiam).  In *Harkey*, the plaintiff was diagnosed with "sleep walking disorder."  *Id.* at *2.  After she walked into another man's hotel room and got into bed at a work-related conference, her employer terminated her.  *Id.* at *1.  She sued, alleging that her conduct was a result of a disability (i.e., her sleep walking disorder).  The Fifth Circuit held her allegations were not actionable under the ADA.  *Id.* at *3–4.

The Court explained that the plaintiff was not terminated "*because of* her disability."  *Id.* at *3.  Importantly, the Court reasoned: "Even if her sleepwalking disorder was a 'disability' under the ADA, she was fired because of what happened when she sleepwalked."  *Id.*  The Court then recounted other previous cases where it had similarly held the ADA does not protect a person's *conduct* even if that conduct was allegedly caused by a medical disability.  *See id.* (discussing *Hamilton v. Sw. Bell*

*Tel. Co.*, 136 F.3d 1047, 1052–53 (5th Cir. 1998), and *Seaman v. CSPH, Inc.*, 179 F.3d 297, 298–99 (5th Cir. 1999)).  The Court concluded: "[Plaintiff] has not shown she was fired because she had a sleepwalking disorder.  She was fired because of what she did when she was sleepwalking."  *Id.* at *4.

This is precisely what Plaintiff alleges.  She alleges that UTSW discriminated against her by dismissing her for carving her name into a cadaver because that conduct was allegedly caused by Plaintiff's ADHD.  Under *Harkey* (and the other authorities cited in *Harkey*), that is not a legally viable claim.  Rather, just as in *Harkey*, Plaintiff was dismissed because of *what she did* that was allegedly caused by ADHD, not because of her ADHD itself.

Because the law does not protect Plaintiff's actions in desecrating a cadaver, regardless of whether those actions were caused by ADHD, Plaintiff has failed to state a claim for relief under the ADA or the Rehabilitation Act.[5]  Thus, the Court should dismiss those claims.

---

[5] It is unclear whether Plaintiff intends to plead her ADA and Rehabilitation Act claims against any of the Individual Defendants.  To the extent she is trying to do so, those claims fail as a matter of law.  The ADA and Rehabilitation Act do not permit individual capacity claims.  *See, e.g.*, *Smith v. Hood*, 900 F.3d 180, 184 n.6 (5th Cir. 2018) (noting "that the ADA cannot be assessed against an individual"); *Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (noting that neither the ADA nor the Rehabilitation Act permits suit against defendants in their individual capacities).  Further, any such claims would be barred by qualified immunity, as Plaintiff cannot show any violation of the ADA or Rehabilitation Act (as discussed above) and certainly cannot point to any clearly established law showing such a violation.  *See al-Kidd*, 563 U.S. at 735, 743; *Bustillos*, 891 F.3d at 222.

### III.  Plaintiff's tort claims are barred by sovereign and official immunity.

###### A.  Plaintiff's tort claims against the Official Defendants are barred by sovereign immunity.

As noted above, the Official Defendants are entitled to sovereign immunity from suit unless Plaintiff can show that "the state has waived sovereign immunity or Congress has expressly abrogated it." *City of Austin*, 943 F.3d at 997.  Plaintiff cannot identify any such waiver for her purported claims of negligent and intentional infliction of emotional distress.

The Texas Tort Claims Act ("TTCA") contains a limited waiver of sovereign immunity for certain types of tort claims against the state and its officials.  Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.025 (waiving sovereign immunity for certain cases involving motor vehicles or personal injury arising out of property).  The TTCA does not waive sovereign immunity from either negligent or intentional infliction of emotional distress.  *See id.*;[6] *see also Jackson v. Sheriff of Ellis Cnty.*, 154 F. Supp. 2d 917, 921 (N.D. Tex. 2001) (dismissing claim for intentional infliction of emotional distress as barred by sovereign immunity); *DeHorney v. Talley*, 630 S.W.3d 297, 307 (Tex. App.—El Paso 2021, no pet.) (affirming dismissal of claims for both intentional and negligent infliction of emotional distress as barred by sovereign immunity).  Because Plaintiff's tort claims against the Official Defendants are barred by sovereign immunity, this Court should dismiss them for lack of jurisdiction.

---

[6] In fact, the TTCA expressly clarifies that it does *not* waive sovereign immunity for claims arising out of an "intentional tort, including a tort involving disciplinary action by school authorities."  Tex. Civ. Prac. & Rem. Code § 101.057(2).

**B.     Plaintiff's tort claims against the Individual Defendants are barred by official immunity.**

Because state immunity doctrine governs suits against state officials who are sued in their individual capacities for alleged violations of state law, Plaintiff's tort claims against the Individual Defendants are governed by Texas' "official immunity" doctrine. *See, e.g.*, *Dupont v. Linden*, 81 F.3d 155, 1996 WL 101418, at *2 (5th Cir. 1996) (per curiam) (applying Texas' official immunity doctrine to claims brought pursuant to state law against a state official in his individual capacity); *Brown v. Wilson Cnty.*, No. SA-97-CA-1473-OG, 1999 WL 33290666, at *2 (W.D. Tex. Mar. 31, 1999) (same). As the Fifth Circuit has observed, "Texas' law of qualified or official immunity is substantially the same as federal immunity law," with the exception that Texas' official immunity doctrine does not include the "clearly established law" element that federal qualified immunity doctrine includes. *Cantu v. Rocha*, 77 F.3d 795, 808–09 (5th Cir. 1996).

Under Texas' official immunity doctrine, "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). A state employee bears the burden to establish these elements. *Id.*

On the face of Plaintiff's own allegations, to the extent that any of the Individual Defendants were involved in the decision to dismiss Plaintiff from UTSW based on her desecration of a cadaver, they are entitled to official immunity. Such decision-making is indisputably part of the Individual Defendants' discretionary

duties at UTSW and something they had full authority to do.   Further, Plaintiff cannot plausibly claim that it is anywhere close to acting in bad faith for a medical school to dismiss a student for desecrating a cadaver.   Thus, the Individual Defendants are entitled to official immunity against Plaintiff's tort claims.

## IV.   Plaintiff's claims against Erin Sine and Jessica Spaniol are also barred by attorney immunity.

"Attorney immunity in Texas is a 'comprehensive affirmative defense protecting attorneys from liability to non-clients.'" *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505 (5th Cir. 2019) (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)).   The scope of attorney immunity "is broad," covering not only attorneys engaged in litigation, but also "the multitude of attorneys that routinely practice and advise clients in non-litigation matters." *Id.* at 506.   Simply put, attorney immunity "protects an attorney where the alleged conduct was within the scope of legal representation." *Id.* at 505 (cleaned up).

Erin Sine and Jessica Spaniol are attorneys for UTSW.[7]   It is apparent on the face of Plaintiff's allegations that any involvement Ms. Sine or Ms. Spaniol may have had in the dismissal of Plaintiff from UTSW would have been as part of those attorneys' routine practice of providing advice to UTSW as its full-time legal counsel.

---

[7] Defendants request this Court to take judicial notice of these readily verifiable facts pursuant to Fed. R. Evid. 201.   *See* https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=316338   (Erin   Sine);   https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=313413   (Jessica Spaniol).

Accordingly, Plaintiff's claims against Ms. Sine and Ms. Spaniol are barred by attorney immunity.

### CONCLUSION & PRAYER

For all the foregoing reasons, Defendants respectfully request this Court to dismiss all of Plaintiff's claims. Defendants also request such further relief to which they may be entitled.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division

*/s/ Benjamin S. Walton*
**BENJAMIN S. WALTON**
*Lead Attorney*
Texas Bar No. 24075241
Assistant Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
benjamin.walton@oag.texas.gov

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2023, a true and correct copy of this document was electronically filed using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

Robert M. Kisselburgh
Kisselburgh Law Firm
1300 S. University Drive, Suite 500
Fort Worth, Texas 76107
Telephone: (817) 500-0990
Fax: (817) 576-1928
robert@kisselburghlaw.com

***Counsel for Plaintiff***

         */s/ Benjamin S. Walton*
**BENJAMIN S. WALTON**
Assistant Attorney General