IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HANNAH HODGES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-2583-K |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL | § | |
| SCHOOL, ANGELA MIHALIC, | § | |
| ROBERT REGE, ADITEE | § | |
| AMBARDEKAR, ERIN SINE, JESSICA | § | |
| SPANIOL, and DANIEL PODOLSKY, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (the "Motion") (Doc. No. 12) filed by Defendants The University of Texas Southwestern Medical School ("UTSW"), Angela Mihalic, Robert Rege, Aditee Ambardekar, Erin Sine, Jessica Spaniol, and Daniel Podolsky (together in their individual capacities, the "Individual Defendants") (together in their official capacities, the "Official Defendants") (together with UTSW, the "Defendants"). Plaintiff Hannah Hodges filed her Response (Doc. No. 14) and Defendants filed their Reply in Support (Doc. No. 16). The Court has carefully considered the Motion, the Response, the Reply, the applicable law, and the relevant portions of the record. The Court **GRANTS in part**

ORDER – PAGE 1

and **DENIES in part** the Motion to Dismiss.  Plaintiff's § 1983 claim for due process violation is: **dismissed without prejudice** against UTSW as barred by Eleventh Amendment immunity, **dismissed with prejudice** against the Individual Defendants because qualified immunity applies, and **dismissed without prejudice** against the Official Defendants for failure to state a due process claim.  Plaintiff's claims for violation of Title II of the Americans with Disabilities Act and for violation of Section 504 of the Rehabilitation Act are:  **dismissed with prejudice** against the Individual Defendants as a matter of law, and **dismissed without prejudice** against UTSW and the Official Defendants for failure to state a claim.  Plaintiff's state tort claims for intentional infliction of emotional distress and negligent infliction of emotional distress are:  **dismissed with prejudice** against the Individual Defendants based on Plaintiff's concession, and **dismissed with prejudice** against UTSW and the Official Defendants as Plaintiff abandoned these claims.  The Court **DENIES** the Motion to Dismiss Plaintiff's claims against Defendants Erin Sine and Jessica Spaniol on the affirmative defense of attorney immunity.  The Court **GRANTS** Plaintiff leave to amend her Complaint consistent with this Memorandum Opinion and Order and only if she has a good faith basis to do so.

I.        **Factual and Procedural Background**

The facts recited herein are those facts alleged in Plaintiff's Complaint (Doc. No.
1) which are relevant to deciding this Motion to Dismiss.  Plaintiff Hannah Hodges
("Plaintiff") has been diagnosed with Attention-Deficit/Hyperactivity Disorder
("ADHD") which affects her ability to stay focused and to "attend to schoolwork."  *Id.*
at ¶ 15.  A symptom of Plaintiff's ADHD is her hands start "mindlessly moving".  *Id.*
at ¶ 20; *see also id.* at ¶ 36.  In the fall of 2021, Plaintiff was a first-year medical student
at Defendant The University of Texas Southwestern Medical School ("UTSW").  Doc.
No. 1 at ¶ 14.  Plaintiff attended an anatomy lab on October 25, 2021, and, while
watching a classmate cut on a cadaver, Plaintiff cut an "H" and a partial "A" "into a
piece of fat of the cadaver."  *Id.* at ¶¶ 18, 20, 22.  Plaintiff was unaware of her actions
at the time she was making those cuts and did not recall doing so later, therefore she
did not "self-report".  *Id.* at ¶¶ 23-25; *see also id.* at ¶ 27.  When this incident happened,
Plaintiff's ADHD was not fully controlled "due to her medication causing side effects,
particularly gastrointestinal distress."  *Id.* at ¶ 21.

On November 1, 2021, Dr. Alisa Winkler and Dr. Janine Prange-Kiel, both non-
parties, sent an e-mail to the anatomy lab students about this incident.  *Id.* at ¶ 26.
Realizing for "the first time . . . what she had done", Plaintiff immediately responded
and accepted responsibility.  *Id.* at ¶ 27.  Plaintiff met with Defendant Angela Mihalic

("Mihalic") on November 2, 2021. *Id.* at ¶ 28. (No where in the Complaint does Plaintiff allege whether the individual Defendants are physicians or even what their respective positions are with UTSW.) After the meeting, "the Deans [sic] office" submitted an emergency meeting request for Plaintiff to see a psychiatrist "with the student mental health office of [UTSW] Student Wellness and Counseling." *Id.* at ¶¶ 30-31. Plaintiff also emailed the professors involved and apologized. *Id.* at ¶ 32.

Later that same day, November 2, 2021, Defendant Mihalic informed Plaintiff that she was charged with "violating EDU-151 Student Conduct and Discipline, as well as the Human Structure Course Policies and Laboratory Rules and Procedures." *Id.* at ¶ 33. In light of the accusations, Plaintiff was connected with non-party Dr. Blake Barker, "another dean," who was "to function as a third party". *Id.* at ¶ 34. Plaintiff met a second time with Defendant Mihalic who said that the disciplinary action being taken "and [proposed] sanctions were based on the fact that her instructors have not had a similar incident at [UTSW] yet." *Id.* at ¶ 35.

On November 3, 2021, Plaintiff had an appointment with non-party Dr. Timothy Wolff, a UTSW psychiatrist, who "stated that mindless hand-movements are consistent with" untreated ADHD, like Plaintiff's. *Id.* at ¶ 37. Over the next few days, Plaintiff emailed her professors and Defendant Mihalic again expressing "her remorse" and explaining how ADHD "had negatively impacted her during the incident." *Id.* at

¶¶ 37-38.  Plaintiff's lab partners contacted Defendant Mihalic to say thee believed Plaintiff did not act intentionally and, based on their knowledge, Plaintiff had not previously treated a cadaver in a disrespectful manner.  *Id.* at ¶ 39; *see also id.* at ¶ 19.

On November 8, 2021, Defendant Mihalic submitted a Notice of Disciplinary Action which proposed Plaintiff's expulsion from UTSW.  *Id.* at ¶ 40.  A student disciplinary hearing was held on December 6, 2021, to address the charges against Plaintiff.  *Id.* at ¶ 42.  Defendants Robert Rege, Aditee Ambardekar, Erin Sine, and Jessica Spaniol comprised the hearing panel.  *Id.* at ¶ 43.  On December 17, 2021, the hearing panel notified Plaintiff of their finding that she violated EDU-151 and that her penalty was expulsion.  *Id.* at ¶ 45.  The decision letter did not mention Plaintiff's ADHD.  *Id.* at ¶ 45.  Plaintiff appealed this decision to Defendant Daniel Podolsky on December 31, 2021, and her appeal was denied and her expulsion upheld on January 20, 2022.  *Id.* at ¶¶ 46-47.

Plaintiff filed this suit against UTSW as well as Angela Mihalic, Robert Rege, Aditee Ambardekar, Erin Sine, Jessica Spaniol, and Daniel Podolsky, in their individual capacities (together, the "Individual Defendants") and in their official capacities, (together, the "Official Defendants").  Plaintiff asserts the following claims against UTSW, the Official Defendants, and the Individual Defendants:  (1) § 1983 claim for violating Plaintiff's right to due process pursuant to the Fourteenth Amendment; (2)

violation of Title II of the American with Disabilities Act (the "ADA"); (3) violation of Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"); (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.

## II.     Legal Standards and Applicable Law

### A.     Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)).  With limited exceptions, the Eleventh Amendment proscribes private suits brought in federal court against a State, including its agencies or departments.  *See Pennhurst State Sch.* & *Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Immunity under the Eleventh Amendment deprives the court of subject matter jurisdiction and this may be challenged in a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See, e.g., Ross v. Tex. Educ. Agency*, 409 F. App'x 765, 768 (5th Cir. 2011) (per curiam); *cf. Pennhurst*, 465 U.S. at 98 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III[.]").  The court may dismiss for lack of subject matter jurisdiction on any one of the following:  (1) the complaint alone; (2) the complaint supplemented by undisputed

facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *accord Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A Rule 12(b)(1) motion that challenges the court's subject matter jurisdiction solely on the face of the complaint is a facial attack. *See Williamson*, 645 F.2d at 412. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980); *see Williamson*, 645 F.2d at 412 (when Rule 12(b)(1) motion is facial attack, "the plaintiff is left with safeguards similar to those retained" on a Rule 12(b)(6)). Thus, if the plaintiff has sufficiently alleged jurisdiction, the court must deny the Rule 12(b)(1) motion. *See Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018) (Fitzwater, J.).

**B.** **Rule 12(b)(6)**

In considering a Rule 12(b)(6) motion, the court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A well-pleaded complaint must allege facts upon which the claims are based, not simply recite in a conclusory fashion the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court "accept[s] all well-pleaded

facts as true and draw[s] all reasonable inferences in favor of the nonmoving party."
*Morgan v. Swanson*, 659 F.3d 359, 370  (5th Cir. 2011) (en banc).  The court does not
accept as true "a number of categories of statements, including legal conclusions; mere
'labels'; 'threadbare recitals of the elements of a cause of action'; 'conclusory
statements'; and 'naked assertions devoid of further factual enhancement.'"  *Id.*
(cleaned up) (quoting *Aschcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).  The claim must
be pled with "facial plausibility" meaning the "factual content . . . allows the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 570 (the alleged facts must be facially
plausible such that they nudge the plaintiff's claims "across the line from conceivable
to plausible.").  "Of course, a well-pleaded complaint may proceed even if it strikes a
savvy judge that actual proof of those facts is improbable."  *Kelson v. Clark*, 1 F.4th 411,
416 (5th Cir. 2021).

### C.    Section 1983

"Section 1983 'is not itself a source of substantive rights,' but merely provides
'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510
U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  "A
plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of
federal law, and then shows that the violation was committed by someone acting under

color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

A public official can invoke the defense of qualified immunity to avoid liability when sued in his individual capacity for the performance of his duties. *See Rich*, 920 F.3d at 294. Qualified immunity shields a public official but only "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Roque v. Harvel*, 995 F.3d 325, 331 (5th Cir. 2021) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)); *see also Morgan*, 659 F.3d at 370 ("The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law,' so [courts] do not deny immunity unless 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Morgan*, 659 F.3d at 371 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) and *Aschcroft v. al-Kidd*, --- U.S. ----, 131 S. Ct. 2074, 2083 (2011)).

At the motion to dismiss stage, the defendant is entitled to qualified immunity unless the plaintiff meets her burden "to demonstrate the inapplicability of the defense." *Kelson*, 1 F.4th at 416. To do so, the plaintiff must allege facts sufficient to plausibly show that (1) the defendant violated a constitutional right of the plaintiff

and (2) the constitutional right was clearly established at the time of the alleged violation. *Morgan*, 659 F.3d at 371 (citing *al-Kidd*, 563 U.S. at 735).

The court may use its discretion in determining which of the two steps to address first based on the circumstances in the particular case before it. *al-Kidd*, 563 U.S. at 735; *accord Morgan*, 659 F.3d at 371. The Fifth Circuit has "repeatedly emphasized that there is value in addressing both questions 'to develop robust case law on the scope of constitutional rights.'" *Roque*, 995 F.3d at 332 (quoting *Joseph*, 981 F.3d at 331 n.40). However, the Fifth Circuit has also affirmed that "a court may rest its analysis on either prong." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020).

## III.   Analysis

In their Motion, Defendants move the Court to dismiss all of Plaintiff's claims either for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

### A.   Section 1983 Claim for Due Process Violation

Plaintiff alleges she was deprived of her constitutionally protected liberty and property interests in her "good name and reputation" and in her education at UTSW because Defendants violated her due process rights in the disciplinary proceedings and in expelling her from UTSW. *See* Doc. No. 1 at ¶¶ 53-70. UTSW and the Official Defendants move for dismissal of this claim (on the Complaint alone) because it is

barred by sovereign immunity and also, as to the Official Defendants, dismissal for failure to state a claim.   Doc. No. 12 at 8-13.   The Individual Defendants assert qualified immunity and argue this claim is barred on that basis. *Id.* at 13-16.   Plaintiff responds that this claim is not barred by either sovereign immunity or qualified immunity and that she has sufficiently pled this claim.

   **1.** **UTSW**

  The Eleventh Amendment bars private suits in federal court against states, including state agencies, unless the state has waived, or Congress has abrogated, the state's sovereign immunity.  *Pennhurst*, 465 U.S. at 98-100.  The Supreme Court "'has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens . . . . Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'"  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) and *Welch v. Tex. Dep't of Highways & Public Transp.*, 483 U.S. 468, 480 (1987)); *accord Corn v. Miss. Dept. of Public Safety*, 954 F.3d 268, 274 (5th Cir. 2020); *see also Sherwinski v. Peterson*, 98 F.3d 849, 852 (5th Cir. 1996) (holding that the Texas Tort Claims Act waived sovereign immunity "in state court only.").

  The Fifth Circuit previously held that UTSW is an arm of the State of Texas and, therefore, entitled to Eleventh Amendment immunity.  *Daniel v. Univ. Of Tex. Sw.*

*Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020) (employing the six *Clark* factors in determining that UTSW "is entitled to arm-of-the-state status") (citing *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736 (5th Cir. 1986)).   Plaintiff acknowledges as much in her Response.   Doc. No. 14 at 7.   Accordingly, taking the well-pled allegations as true, Plaintiff's § 1983 claim against UTSW is barred by Eleventh Amendment immunity. *See Moore*, 743 F.3d at 963 ("Federal courts are without jurisdiction over suits against a state, state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has abrogated it."); *cf. Will*, 491 U.S. at 67 (Congress did not abrogate state sovereign immunity in enacting § 1983); *Tex. Nat'l Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002) (only the Texas Legislature can waive sovereign immunity).

Plaintiff argues, however, that the *Ex parte Young* exception applies to her § 1983 claim, so it is not barred.   The Supreme Court acknowledged in *Ex parte Young* that "a suit challenging the constitutionality of a state official's action is not one against the State."   *Pennhurst*, 465 U.S. at 102 (citing *Ex parte Young*, 209 U.S. 123 (1908)). Plaintiff's reliance on the limited *Ex parte Young* exception is misplaced though since it applies only to claims brought against state officials and only for prospective injunctive relief.   *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *cf. Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (federal

ORDER – PAGE 12

courts may enjoin a state official sued in their official capacity, but not state agencies, "from taking future actions in furtherance of a state law that offends federal law or the federal Constitution."). "The [*Ex parte*] *Young* exception has no application in suits against the States and *their agencies*, which are barred regardless of the relief sought." *Moore*, 743 F.3d at 963 (internal quotations omitted) (quoting *P.R. Aqueduct*, 506 U.S. at 146); *see Pennhurst*, 465 U.S. at 102 ("This jurisdictional bar [of private suits against a State] applies regardless of the nature of the relief sought."). Accordingly, this exception to Eleventh Amendment immunity does not apply and this claim is barred.

Plaintiff's § 1983 claim against UTSW is **dismissed without prejudice for lack of subject matter jurisdiction** under Rule 12(b)(1). *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 688 n.4 (N.D. Tex. 2014) (Fitzwater, C.J.) ("*Shah I*") ("When Eleventh Amendment immunity applies, it deprives the court of subject matter jurisdiction.").

### 2.    The Official Defendants

The Official Defendants move to dismiss Plaintiff's § 1983 claim against them as barred by sovereign immunity and for failure to state a claim for due process violation. Doc. No. 12 at 9-13. As for the sovereign immunity argument, Plaintiff responds that the claim is not barred since the *Ex parte Young* exception applies. Doc. No. 14 at 7-8. Although not addressed specifically to the Official Defendants'

argument that she fails to state a due process claim, Plaintiff does argue that she plausibly states her due process claim in her response to the Individual Defendants' assertion of qualified immunity.  Doc. No. 14 at 8-15.

"A suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  For the same reasons UTSW enjoys immunity under the Eleventh Amendment, the Official Defendants are likewise entitled to Eleventh Amendment immunity.  *See Will*, 491 U.S. at 71.  Plaintiff does argue that *Ex parte Young* applies so her § 1983 claim is not barred.  A plaintiff suing a state official in their official capacity for injunctive relief is "a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State,'" *Will*, 109 U.S. at 71 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)); *see also Pennhurst*, 465 U.S. at 102 ("[A] suit challenging the constitutionality of a state official's action is not one against the State.").  Therefore, "[s]uits by private citizens against state officers in their official capacities are not . . . categorically barred." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (cleaned up) (quoting *Fontenot*, 777 F.3d at 752).  "The theory of the [*Ex parte Young*] case was than an unconstitutional enactment is 'void' and therefore does not 'impart to the officer any immunity from responsibility to the

ORDER – PAGE 14

supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 102  (cleaned up) (quoting *Ex parte Young,* 209 U.S. at 160).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Fontenot*, 777 F.3d at 752 (cleaned up) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  The Official Defendants do not dispute that Plaintiff requests prospective injunctive relief, but assert that Plaintiff's allegations do not show an "ongoing violation of federal law". Doc. No. 12 at 10.  The Official Defendants' argument is two-fold:  first, there is no authority which holds that Plaintiff has a liberty or property interest in attending medical school at UTSW or in her reputation; and second, even if she does have such an interest, none of the Official Defendants deprived her of that interest.  *Id.* at 11-12. The Official Defendants contend the Eleventh Amendment bars Plaintiff's § 1983 claim as asserted against them.  *Id.* at 10-13; Doc. No. 16 at 2-5.  Plaintiff argues this claim is not barred because her request to be reinstated into UTSW's medical program as a medical student is prospective injunctive relief which is "acceptable . . . for *Ex parte Young* purposes."  Doc. No. 14 at 8.  This is the extent of Plaintiff's responsive argument.   In their Reply, Defendants reassert their argument that Plaintiff's

allegations fail to satisfy the "ongoing violation" requirement of *Ex parte Young*.  Doc. No. 16 at 2.

Having made a "straightforward inquiry" of the allegations in Plaintiff's Complaint, the Court concludes the *Ex parte Young* exception applies. First, Plaintiff seeks prospective relief in the form of an injunction that "order[s] all records related to her expulsion [] be expunged and reinstat[e] Plaintiff as a full-time student at UT Southwestern."  Doc. No. 1 at 13; *see Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 3d 480, 495 (N.D. Tex. 2015)(Fitzwater, C.J.) ("*Shah II*") (injunctive relief plaintiff sought was "clearly prospective" for he sought to require defendants to remove the "unconstitutional dismissal" from his record and to prevent defendants from "disseminating information regarding his dismissal to other universities."), *aff'd*, 668 F. App'x 88 (5th Cir. 2016) (adopting and incorporating district court's opinion *in toto* because "the analysis, reasoning, and conclusions" are "comprehensive and correct" rendering a separate opinion unnecessary); *Gilani v. Univ. of Tex. Sw. Med. Ctr.*, Civ. Action No. 3:21-CV-1461-N, 2023 WL 2518811, at * 3 (N.D. Tex. Mar. 13, 2023)(Godbey, C.J.) (plaintiff's requested relief was prospective to the extent he sought an injunction requiring defendants to correct his transcript "to reflect passing grades and no disciplinary actions" and "to release his transcript and other relevant academic

records."). Moreover, Defendants do not dispute that Plaintiff seeks prospective injunctive relief.

The Court turns now to the "ongoing violation of federal law" requirement. On multiple occasions, the Supreme Court and the Fifth Circuit have assumed without deciding that a student has a protected interest in higher education at a public university. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222-23 (1985); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 98 (1978); *Shaboon v. Duncan*, 252 F.3d 722, 730 (5th Cir. 2001); *Davis v. Mann*, 882 F. 2d 967, 973 (5th Cir. 1989). Earlier this year, another court in this District reaffirmed a previous holding "that interference with a constitutionally protected liberty or property interest, such as attending medical school, constitutes an ongoing violation under *Ex parte Young*." *Gilani*, 2023 WL 2518811, at * 3 (citing *Shah II*, 129 F. Supp. 3d at 496). Plaintiff alleges her expulsion from UTSW "will be communicated to [her] future academic programs and employers" and will "forever" remain on her academic record, thereby harming her reputation. Doc. No. 1 at ¶¶ 59, 67. In *Shah* (*I* and *II*), a medical student with ADHD was dismissed from medical school for "professionalism" violations and he sued numerous defendants asserting several claims related to his dismissal and he sought injunctive relief. *Shah I*, 54 F. Supp. 3d at 687-88; *Shah II*, 129 F. Supp. 3d at 486-88. The court concluded that the plaintiff alleged a continuing deprivation of "his

ORDER – PAGE 17

property and liberty interests in his professional reputation" because of the threat that defendants would inform other medical schools or "third parties" of the plaintiff's negative evaluation forms and his dismissal from the medical school. *Shah II*, 129 F. Supp. 3d at 496.

Here, the Court may reasonably infer from Plaintiff's factual allegations in the Complaint that there is an "ongoing violation". *See also Gilani*, 2023 WL 2518811, at * 3 (plaintiff's allegations that his former medical school would send "deficient transcript" including failing grades and disciplinary notes to another medical school allowed the court to reasonably infer an "ongoing violation"). Plaintiff faces the threat that the Official Defendants will send another school or potential employer Plaintiff's UTSW records, which include her expulsion, and this might prevent Plaintiff from being accepted into another academic program at a public university or from being offered employment, which would further deprive her of a protected property interest. *See Shah II*, 129 F. Supp. 3d at 495-96 (assuming without deciding student has some protected interest in higher education at a public university); *Gilani*, 2023 WL 2518811, at * 3.

The Court notes that Plaintiff specifically seeks an award of monetary damages, costs, and attorneys' fees related to her § 1983 claim. Doc. No. 1 at 13. This relief is barred by the Eleventh Amendment and the *Ex parte Young* exception does not save it.

ORDER – PAGE 18

*See Pennhurst*, 465 U.S. at 102-03 ("[T]he federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief."); *NiGen Biotech*, 804 F.3d at 394 (recognizing that the Eleventh Amendment bars claims for retrospective monetary damages as such claims "seek to impose a liability which must be paid from public fund in the state treasury.") (internal quotations omitted).   Accordingly, Plaintiff's § 1983 claim seeking retrospective monetary relief against the Official Defendants is barred by Eleventh Amendment immunity and **dismissed without prejudice**.

Although the *Ex parte Young* exception saves Plaintiff's § 1983 claim against the Official Defendants for prospective injunctive relief, the Court concludes for the detailed reasons set forth below in Section III.A.3 that Plaintiff fails to plausibly plead a due process claim against the Official Defendants.   Therefore, Plaintiff's § 1983 claims against the Official Defendants for prospective injunctive relief is **dismissed** under Rule 12(b)(6).

### 3.   Individual Defendants

Plaintiff alleges the Individual Defendants' conduct related to her expulsion violated her due process rights as guaranteed under the Fourteenth Amendment, which prohibits states from depriving "any person of life, liberty, or property, without due process of law[.]"   U.S. Const. amend. XIV.   To state a § 1983 claim, the plaintiff

must "'show[] a violation of the Constitution or of federal law, and then show[] that the violation was committed by someone acting under color of state law.'"  *Rich*, 920 F.3d at 293-94 (cleaned up) (quoting *Brown*, 519 F.3d at 236).

The Individual Defendants move to dismiss Plaintiff's § 1983 claim against them on the basis of qualified immunity.  At the motion to dismiss stage, the plaintiff bears the burden "to demonstrate the inapplicability of the [qualified immunity] defense." *Kelson*, 1 F.4th at 416.  The plaintiff must allege facts which plausibly show that (1) the defendant violated a constitutional right of the plaintiff and (2) the constitutional right was clearly established at the time of the alleged violation.  *Morgan*, 659 F.3d at 371 (citing *al-Kidd*, 563 U.S. at 735).

The Court first determines whether Plaintiff alleges facts which permit the Court to reasonably infer that the Individual Defendants' conduct violated her Fourteenth Amendment right to due process.

Although it is not clear from her Complaint, Plaintiff's argument in her Response addresses both substantive due process and procedural due process.  Doc. No. 14 at 9, 13.  Plaintiff alleges she has a liberty and property interest in her continued education at UTSW and also in her "good name and reputation".  *Id.* at ¶¶ 55, 58-59, 67-68. These constitutionally protected interests, according to Plaintiff, were "directly

threatened" and affected by the disciplinary process and hearing, and her expulsion. *Id.* at ¶¶ 60-68, 70.

a.   Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Shah I*, 54 F. Supp. 3d at 691.   To state a claim for due process violation under the Fourteenth Amendment, the plaintiff must show "(1) [s]he was deprived of a life, liberty, or property interest (2) without the process that was due." *Aragona v. Berry*, Civ. Action No. 3:10-CV-1610-G, 2012 WL 467069, at *5 (N.D. Tex. Feb. 14, 2012)(Fish, S.J.) (quoting *Saucedo-Falls v. Kunkle*, 299 F. App'x 315, 319 (5th Cir. 2016)).   As previously stated, the Supreme Court and the Fifth Circuit have assumed without deciding that a student has some protected interest in higher education at a public university.   *See Shah I*, 54 F. Supp. 3d at 691 (citing *Horowitz*, 435 U.S. at 98, *Shaboon*, 252 F.3d at 730, and *Davis*, 882 F. 2d at 973).   The Individual Defendants offer no sound basis for this Court to decline to do the same.   Regardless, "a court can avoid the constitutional interest question when it is clear that the plaintiff 'has been awarded at least as much due process as the Fourteenth Amendment requires.'"   *Aragona*, 2012 WL 467069, at * 5 (quoting *Horowitz*, 435 U.S. at 84-85).   Here, the Court concludes that Plaintiff was given at

least the procedural due process required under the Fourteenth Amendment in academic disciplinary proceedings.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). This requirement is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 333. In the context of a public university student who has been dismissed, the due process requirements hinge on whether the dismissal was disciplinary or academic. *Shah I*, 54 F. Supp. 3d at 692 (citing *Horowitz*, 435 U.S. at 86). A student dismissed for disciplinary reasons rather than academic reasons is required more due process. *Id.* Where a student is dismissed in a disciplinary proceeding, the Supreme Court defined "more process" under the Fourteenth Amendment as giving the student "oral or written notice of the charges against [her] and, if [s]he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). "The [Due Process] Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Id.*

Plaintiff alleges that "the hearing panel found her in violation of EDU-151 [Student Conduct and Discipline] and confirmed her penalty of expulsion." Doc. No.

1 at ¶ 45.  Plaintiff's allegations support a reasonable inference that her expulsion was for disciplinary reasons.  *Cf. Aragona*, 2012 WL 467069, at *5 ("A student is dismissed for disciplinary reasons when he violates a valid rule of conduct.").  Therefore, the Court will apply the more stringent standard for disciplinary dismissals.

It is clear from Plaintiff's allegations, taken in the light most favorable to her, that she was afforded at least as much procedural due process as is constitutionally required by the Fourteenth Amendment.  Plaintiff was "informed" of the charges against her, *see* Doc. No. 1 at ¶ 33, and her proposed expulsion was set forth in a "Notice of Disciplinary Action", *see id.* at ¶ 40.  Plaintiff alleges that she "took responsibility" for her actions; she does not allege she denied the accusations.  *Id.* at ¶ 27.  Moreover, Plaintiff met with Defendant Mihalic twice to discuss the incident and had more than one opportunity to explain her side of the story, in person and through e-mail, with professors and various individual Defendants.  *Id.* at ¶¶ 27-28, 32, 35, 37-38; *see also id.* at ¶ 39 (Plaintiff's lab partners called Defendant Mihalic to explain Plaintiff's actions as unintentional).  A disciplinary hearing was held.  *Id.* at ¶¶ 42-43.   After receiving the letter informing her of the disciplinary finding and her expulsion, Plaintiff appealed the decision, which was ultimately upheld.  *Id.* at ¶¶ 45-47.  Taking the allegations in the light most favorable to Plaintiff, the Court finds she received at least the due process required under the Fourteenth Amendment for a disciplinary dismissal.

*See Goss*, 419 U.S. at 581 (when a student is dismissed for disciplinary reasons, the student must receive "oral or written notice of the charges against" [her] and, if [s]he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."). Thus, even assuming Plaintiff has some protected interest in her continued education at UTSW, the facts alleged do not plausibly state a claim for a procedural due process violation regarding the disciplinary process and her expulsion.

In her Complaint, Plaintiff does allege that "Defendants were, at a minimum, constitutionally required to adhere to [UTSW's] internal policy which provides that the decision 'shall be based on the totality of the evidence.'" Doc. No. 1 at ¶ 60; *see also id.* at ¶¶ 44-45, 62, 64, 65. Plaintiff alleges her evidence of her ADHD was ignored and the disciplinary decisions were made "without a preponderance of all available evidence." *Id.* at ¶¶ 62, 64-65. This argument is unfounded. "A student does not have any due process rights to the procedures established by a state entity's rules or regulations." *Aragona*, 2012 WL 467069, at * 6. Even if UTSW implemented certain procedures or requirements for disciplinary proceedings, that alone does not add to the constitutional requirements under the Fourteenth Amendment. *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) ("Process is not an end in itself. . . . The State may choose to require procedures for reasons other than protection against deprivation of

substantive rights, of course, but in making that choice the State does not create an independent substantive right."). Even if the Court accepted as true Plaintiff's allegations that UTSW had such an internal policy on disciplinary proceedings and that it was not followed, any failure to follow that policy would not itself render the process unconstitutional. *See Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 545 (W.D. La. 2016).

Finally, Plaintiff alleges in a conclusory and vague fashion that "her questions about the process and next steps were often left unanswered." Doc. No. 1 at ¶ 66; *see id.* at ¶ 34. But Plaintiff fails to allege any other facts giving further explanation or context to this conclusory allegation. The Court does not accept as true "conclusory statements" and "naked assertions devoid of further factual enhancement". *See Iqbal*, 556 U.S. at 678.

The Court finds that, taken in the light most favorable to her, Plaintiff does not allege sufficient facts to permit the Court to reasonably infer that her procedural due process rights were violated by the Individual Defendants' actions. *See Iqbal*, 556 U.S. at 678. Because Plaintiff fails to plausibly show that the Individual Defendants violated her constitutional right, the Court's qualified immunity inquiry ends. For these reasons, Plaintiff fails to meet her burden to show qualified immunity does not apply and, therefore, the Individual Defendants are entitled to qualified immunity.

*See Kelson*, 1 F.4th at 416 (defendant is entitled to qualified immunity unless the plaintiff meets her burden).  Also, for all these same reasons that the Court finds Plaintiff fails to plausibly state a procedural due process claim, the Official Defendants are entitled to dismissal of this claim under Rule 12(b)(6).  *See Rich*, 920 F.3d at 293-94 (to state a § 1983 claim, the plaintiff must plausibly allege a constitutional violation committed by someone acting under color of state law).

               b.      Substantive Due Process

Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them."  *Shah I*, 54 F. Supp. 3d at 695 (internal quotations omitted) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1986)).  "The reach of substantive due process is limited, however, and it protects against only the most serious of governmental wrongs."  *Id.* at 695-96.  In a case involving a student's substantive due process challenge to a public university's decision to dismiss him, the Supreme Court warned of the "profound importance" of "restrained judicial review" of decisions by educational institutions, quoting Justice White in explaining:

> Although the Court regularly proceeds on the assumption that the Due Process Clause has more than a procedural dimension, we must always bear in mind that the substantive content of the Clause is suggested neither by its language nor by preconstitutional history; that content is nothing more than the accumulated product of judicial interpretation of the Fifth and Fourteenth Amendments.

ORDER – PAGE 26

*Ewing*, 474 U.S. at 225 (quoting *Moore v. E. Cleveland*, 431 U.S. 494, 543-44 (1977)(WHITE, J., dissenting).

To state a claim for a substantive due process violation, the plaintiff must allege that "(1) [s]he was deprived of a life, liberty, or property interest (2) in an arbitrary and capricious manner." *Saucedo-Falls*, 299 F. App'x at 319 (citing *Moulton*, 991 F.2d at 230). "In determining whether the government's action has been arbitrary in the constitutional sense, the Court asks whether the government action 'shocks the conscience.'" *Eustice v. Tex. A&M Univ.*, 2016 WL 8710444, at * 7 (S.D. Tex. Sept. 30, 2016) (determining plaintiff's substantive due process claim arising from his disciplinary-related expulsion) (quoting *Pham*, 194 F. Supp. 3d at 545). "Only the most egregious executive action can be said to be 'arbitrary in the constitutional sense.'" *Cnty. of Sacramento*, 523 U.S. at 834. "In the context of dismissal from an academic program, substantive due process amounts to a constitutional protection against arbitrary dismissal." *Logarbo v. La. State Univ. Health Scis. Ctr.*, 2022 WL 17683219, at * 6 (W.D. La. Nov. 29, 2022).

In asserting this claim, Plaintiff alleges she a constitutionally protected interest in her continued education at UTSW and in her "good name and reputation". Doc. No. 1 at ¶¶ 55, 58-59, 68. Although the Supreme Court has assumed without deciding that a student has a constitutionally protected property right in continued enrollment

at a public university, *see, e.g., Ewing*, 474 U.S. at 222-23, there is no case law which directly holds that a student has a *substantive* due process right to continued education. *See Shah I*, 54 F. Supp. 3d at 696-97 ("The law regarding substantive due process rights in the context of higher education, however, is far from settled.") (collecting cases in which the courts assumed without deciding that such a right exists).  Further, binding case law instructs that any constitutionally protected interest in Plaintiff's "good name and reputation" does not alone trigger due process protections.  The Supreme Court confirmed that case law, including *Wisconsin v. Constantineau*, 400 U.S. 433 (1971) as cited by Plaintiff, "does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protections of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) ("Neither damage to reputation alone nor the stigma resulting from the [dismissal] itself trigger the protections of due process.").  Therefore, any constitutionally protected interest Plaintiff has in her "good name and reputation" does not alone trigger due process protections.

The Court is not convinced that Plaintiff can assert a substantive due process claim since a student's "substantive due process rights in the context of higher education . . . is far from settled." *Shah I*, 54 F. Supp. 3d at 696-97.  Nevertheless, the

ORDER – PAGE 28

Court will assume without deciding that she can and that she has at some constitutionally protected property interest in her education at UTSW and, taken together, in her "good name and reputation".  Taking the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff alleges no facts from which the Court can reasonably infer that the Individual Defendants' conduct was so arbitrary as to "shock the conscience" when she received notice (written and oral) of the charges, a hearing by a panel of four people, and an appeal of the decision to expel her from UTSW, all arising from the disciplinary violation of cutting letters into a cadaver.  *See also Pham*, 194 F. Supp. 3d at 548 ("Expelling a student [for a disciplinary violation] after a hearing, a supplemental hearing, and an appeals process is not the type of conduct which shocks the conscience as a matter of law.").

Plaintiff fares no better were the Court to apply the standard for a "genuinely academic decision" rather than a disciplinary decision.  "When judges are asked to review the substance of a genuinely academic decision . . .they show great respect for the faculty's professional judgment.  Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the persons or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225; *see also Salcido v. Univ. of S. Miss.*, 557 F. App'x 289, 294 (5th Cir. 2014) ("Substantive due process requires public officials exercising their

professional judgment to do so in a nonarbitrary and noncapricious manner."). Plaintiff alleges no facts which, taken in the light most favorable to her, allow the Court to reasonably infer that the Individual Defendants' actions were "such a substantial departure from accepted norms" that the Individual Defendants "did not actually exercise professional judgment" in deciding to expel her and in upholding that decision on appeal. *See Ewing*, 474 U.S. at 225.

Taken in the light most favorable to Plaintiff, the factual allegations do not support a reasonable inference that the Individual Defendants' conduct, in deciding to take disciplinary action and expel her and in upholding the decision on appeal, satisfies "the constitutional concept of conscience shocking," *Cnty. of Sacramento*, 523 U.S. at 848, or even was "a substantial departure from accepted norms" of exercising professional judgment, *Ewing*, 474 U.S. at 225. Because Plaintiff fails to plausibly state a claim that the Individual Defendants violated her substantive due process rights, the Court's qualified immunity inquiry ends. For these reasons, Plaintiff fails to meet her burden to show that qualified immunity does not apply and, therefore, the Individual Defendants are entitled to qualified immunity. *See Kelson*, 1 F.4th at 416. Also, for all these same reasons that the Court finds Plaintiff fails to plausibly state a substantive due process claim, the Official Defendant are entitled to dismissal of this claim under Rule 12(b)(6). *See Rich*, 920 F.3d at 293-94 (to state a § 1983 claim, the plaintiff must

plausibly allege a constitutional violation committed by someone acting under color of state law).

### 4.    Conclusion

The Court finds Plaintiff's § 1983 claim for due process violations against UTSW is barred by Eleventh Amendment immunity and is, therefore, **dismissed without prejudice for lack of subject matter jurisdiction**.   The Individual Defendants are entitled to qualified immunity on Plaintiff's § 1983 claim because she fails to plausibly allege facts showing a violation of her procedural or substantive due process rights under the Fourteenth Amendment; therefore, the claim against the Individual Defendants is **dismissed with prejudice**.  Although Plaintiff's § 1983 claim for injunctive relief against the Official Defendants is not barred by Eleventh Amendment immunity, the Court finds Plaintiff fails to plausibly state a claim for procedural due process violation or substantive due process violation.  Therefore, the § 1983 claim against the Official Defendants is **dismissed without prejudice** pursuant to Rule 12(b)(6).

### B.    Disability Discrimination Claim Under the ADA and the Rehabilitation Act

Defendants move to dismiss Plaintiff's claims against UTSW and the Official Defendants under the ADA and the Rehabilitation Act for failure to state a claim.  Doc. No. 12 at 16-18.  Defendants argue that Plaintiff fails to allege facts showing that she

was expelled *because of* her disability.  *Id.* at 17 (emphasis added).  Defendants also argue that, to the extent Plaintiff asserts these claims against the Individual Defendants, the claims fail as a matter of law because the ADA and the Rehabilitation Act do not permit individual capacity claims.  *Id.* at 18 n. 5.  Plaintiff responds that her disability was known to UTSW and her professors, that her professors knew "she often doodles to maintain concentration", and that she "further provided additional evidence to the hearing board that was ultimately disregarded."  Doc. No. 14 at 16.  Plaintiff argues that her "doodling on the cadaver lead to [her] misconduct violation and ultimately her expulsion" and "Defendants failed to take into consideration that it was because of [her] disability that she was brought before the disciplinary board."  *Id.*  Plaintiff also makes a single conclusory statement for the first time in her Response that UTSW discriminated against her in denying her "services as a result of her disability and its manifestation."  *Id.*  Plaintiff makes no allegation in the Complaint that her ADA and Rehabilitation Act claims arise from the denial of any services or accommodations related to her disability.  The Court does not consider this conclusory assertion in determining the sufficiency of Plaintiff's claims under the ADA and the Rehabilitation Act as alleged in her Complaint.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits

of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). "The only difference between the ADA and the Rehabilitation Act in the application of these elements concerns the final requirement." *Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 879 (S.D. Tex. 2012), *aff'd*, 524 F. App'x 93 (5th Cir. 2013). The ADA prohibits an individual's exclusion "by reason of [their] disability," 42 U.S.C. § 12132, whereas the Rehabilitation Act prohibits an individual's exclusion "solely by reason" of their disability, 29 U.S.C. § 794(a). "Thus, while Section 504 establishes a 'sole cause' test for causation, the ADA instead establishes a 'motivating factor' test." *Maples*, 901 F. Supp. 2d at 879; *see Pinkerton v. Spellings*, 529 F.3d 513, 516-19 (5th Cir. 2008).

The ADA and the Rehabilitation Act "are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). "A plaintiff states a claim under Title II of the ADA or Section 504 of the Rehabilitation Act 'in the context of a student excluded from an educational

program,' if he establishes that: (1) he has a qualifying disability; (2) he is qualified to participate in the defendant's program; and (3) he was excluded from the defendant's program due to his disability." *Shrub v. Univ. of Tex. Health Sci. Ctr. at Houston-Sch. of Med.*, 63 F. Supp. 3d 700, 707 (S.D. Tex. 2014) (internal quotation omitted).

As an initial matter, the Court agrees with Defendants and finds that Plaintiff's claim for violation of the ADA or the Rehabilitation Act against the Individual Defendants fails as a matter of law. "Suits under the ADA and the Rehabilitation Act must be brought against a 'public entity' as opposed to individuals." *Phillips next friend of J.H. v. Prator*, 2022 WL 3376524, at * 2 n.2 (5th Cir. Aug, 3, 2021) (citing *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) and *Smith v. Hood*, 900 F.3d 180, 184 n. 6 (5th Cir. 2018)). For this reason, Plaintiff's claims for violation of the ADA and the Rehabilitation Act against the Individual Defendants are **dismissed with prejudice**.

Turning to UTSW and the Official Defendants, they dispute only the third prong, arguing Plaintiff fails to allege facts plausibly showing her expulsion was by reason of her ADHD or that her disability was the sole cause for her expulsion. Plaintiff alleges her ADHD, affects her ability to remain focused and "attend to schoolwork". Doc. No. 1 at ¶ 15. Plaintiff alleges that a symptom of her ADHD is her hands "mindlessly mov[e]", and that she "subconsciously" cut an "H" and a partial "A" into

a cadaver. *Id.* at ¶¶ 20, 22-23; *see also id.* at ¶¶ 25, 27, 36-37.  Specifically in support of her ADA and Rehabilitation Act claims, Plaintiff alleges that: Defendants ignored evidence of her disability during the disciplinary process, in the Hearing Decision Letter, and during the appeal, and expelled her for actions that were a symptom of her ADHD, *id.* at ¶¶ 78, 90;  Defendants compared her to students without disabilities because they "based their conclusion" (presumably as to the disciplinary action and decision) on never having previously seen a similar incident, *id.* at ¶¶ 79, 91; and Defendants discriminated against her based on her disability "as evidenced, amongst other things, by Defendant Mihalic's statements about ADHD" and Adderall, a treatment drug, *id.* at ¶¶ 81, 93.  Plaintiff claims Defendant Mihalic has "biased views" because she previously told "a group of students" no one should use Adderall, irrespective of an ADHD diagnosis. *Id.* at ¶ 29.

Taking the allegations in the light most favorable to Plaintiff, the Court finds that she fails to allege facts which plausibly show her ADHD was the sole cause for her expulsion (the Rehabilitation Act) or even that ADHD was a motivating factor (the ADA).  Based on her own allegations, Plaintiff was disciplined and expelled for violating EDU-151- Student Conduct and Discipline, *see id.* at ¶ 45, when she "cut" letters into a cadaver.  That Plaintiff's ADHD allegedly caused her to cut these letters into a cadaver, even subconsciously, "is of no matter." *Harkey v. NextGen Healthcare, Inc.*, 2022

WL 2764870, at * 4 (5th Cir. July 15, 2022). In *Harkey*, the plaintiff was fired for "severe, unprofessional, and inappropriate conduct" which she alleged was caused by her sleepwalking disorder. *Id.* at * 4. Examining prior holdings, the Fifth Circuit highlighted "the line between" suffering an adverse action *because of the disability* and suffering the adverse action *because of the conduct* that occurred as a result of the disability. *Id.* at * 3-4. The Fifth Circuit held that, even though the plaintiff maintained that her sleepwalking disorder caused her to "sleepwalk[] into her male co-worker's room" on a work trip, the conduct itself gave the defendant "reason to fire" her. *Id.*; *see also Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052-53 (5th Cir. 1998) (holding that an employee's "angry and profane confrontation with his manager" was presumably caused by his PTSD, but his conduct "violated company policy" which resulted in his termination). Therefore, "the ADA is no barrier to her termination." *Harkey*, 2022 WL 2764870, at * 4.

Although not factually on all fours, the Court finds *Harkey* to be instructive if not on point for the third prong of ADA and Rehabilitation Act claims. Plaintiff does not allege any facts which plausibly show that her ADHD itself, rather than her conduct even if caused by her ADHD as she alleges, was a motivating factor or the sole reason for her expulsion from UTSW. Rather, the Court can reasonably infer from Plaintiff's allegations, taken in the light most favorable to her, that she was expelled because her

conduct, cutting letters into a cadaver during an anatomy lab, violated UTSW's code of student conduct and discipline. *Cf. Harkey*, 2022 WL 2764870, at * 4 ("The ADA does not give employees license to act with impunity."). That Plaintiff's actions might have happened as a result of her ADHD and her "mindlessly moving" hands "is of no matter". *Harkey*, 2022 WL 2764870, at * 3. Accordingly, the Court finds that Plaintiff fails to plausibly state a claim for violation of the ADA or a claim for violation of the Rehabilitation Act against UTSW and the Official Defendants and, therefore, these claims are both **dismissed without prejudice** under Rule 12(b)(6).

### C.    State Tort Claims

Plaintiff alleges claims against the Defendants for intentional and negligent infliction of emotional distress. The Defendants move to dismiss these claims against UTSW and the Official Defendants as barred by sovereign immunity and against the Individual Defendants as barred by official immunity. Doc. No. 12 at 19-21. In her Response, Plaintiff makes a single statement: "Plaintiff concedes that the claims for negligent and intentional infliction of emotional distress should be dismissed as to the Individual Defendants pursuant to Tex. Civ. Prac. & Rem. Code § 101.106." Doc. No. 14 at 16. Plaintiff wholly fails to respond to the sovereign immunity argument put forth by UTSW and the Official Defendants.

In light of Plaintiff's concession regarding the Individual Defendants, the Court hereby **dismisses with prejudice** the state law tort claims for intentional and negligent infliction of emotional distress against the Individual Defendants.  The Court finds these claims against UTSW and the Official Defendants should be **dismissed**. "A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbeque, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022); *accord In re Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017).  Because Plaintiff effectively abandoned these claims by failing to respond, Plaintiff's claims for intentional and negligent infliction of emotional distress against UTSW and the Official Defendants are **dismissed with prejudice**.

The Court would nevertheless be compelled to dismiss these tort claims against UTSW and the Official Defendants.  *See, e.g., Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004) (internal citation omitted) (Texas Tort Claims Act ("TTCA") expressly waives sovereign immunity in only "three areas: 'use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.'"); *DeHorney v. Talley*, 630 S.W.3d 297, 307 (Tex. App.—El Paso 2021, no pet. h.) ("[T]he TTCA does not contain a waiver of immunity for claims for negligent infliction of emotional distress because no such cause of action is recognized under Texas law."); TEX. CIV. PRAC. & REM. CODE § 101.057(2) (sovereign immunity

expressly not waived for intentional torts); *see also id.* § 101.102(a) (emphasis added) ("A suit under this chapter *shall* be brought in *state court* in the county in which the cause of action arose or a part of the cause of action arises."); *see also id.* § 101.106(e) ("If a suit is filed . . . against both a governmental unit and any of its employees, the employees shall be dismiss on the filing of a motion by the governmental unit.").

### D.   Attorney Immunity

Defendants also move the Court to dismiss each of Plaintiff's claims against Defendants Sine and Spaniol on the basis of attorney immunity.  Defendants Sine and Spaniol contend that they are attorneys for UTSW, which is not alleged in the Complaint, and ask the Court to take judicial notice of this fact.  Doc. No. 12 at 21. Defendants Sine and Spaniol argue that it is apparent from the face of Plaintiff's Complaint that "any involvement Ms. Sine or Ms. Spaniol may have had in the dismissal of Plaintiff from UTSW would have been as part of those attorneys' routine practice of providing advice to UTSW as its full-time legal counsel."  *Id.*  The Court disagrees.  In Texas, attorney immunity shields attorneys and law firms from suit by third parties for legal services provided in representing a client.  *See Haynes* & *Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 76, 81 (Tex. 2021).  This affirmative defense is "intended to ensure loyal, faithful, and aggressive representation by attorneys

employed as advocates." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (internal quotations omitted).

A Rule 12(b)(6) motion to dismiss on the basis of an affirmative defense may be granted only if the defense appears on the face of the complaint. *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). "[I]t must be apparent from the plaintiff's own allegations that a defense is fatal to the claim." *Id.* (internal quotations omitted). The attorney has the burden to establish attorney immunity applies. *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017). Even taking judicial notice of Defendants Sine's and Spaniol's employment with UTSW as legal counsel, the Court cannot conclude that attorney immunity is apparent from the face of Plaintiff's Complaint. *See Bell,* 27 F.4th at 320. Therefore, the Court **denies** the Motion to Dismiss under Rule 12(b)(6) Plaintiff's claims against Defendants Sine and Spaniol on the basis of the affirmative defense of attorney immunity.

## IV.   Leave to Amend

Plaintiff requests leave to amend her Complaint if the Court determines any portion of it "deficient in any manner." Doc. No. 14 at 17-18. Plaintiff notes that she has not yet amended her Complaint, even as a matter of course. *Id.* at 17. Rule 15(a)(2) provides that a court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Although "leave to amend is *not* automatic", "there is a strong

ORDER – PAGE 40

presumption in favor of granting leave to amend[.]"   *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006).   Here, the Court has determined that Plaintiff's *original* Complaint should be dismissed in its entirety for the aforementioned reasons.   To be sure, certain claims are barred by immunity and, therefore, not subject to being amended.   But the Court is not securely certain that Plaintiff is unable to cure some of the other deficiencies with further factual allegations.

Courts in this circuit recognize that "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable in a manner that will avoid dismissal."   *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005)(Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).   Accordingly, the Court **grants** Plaintiff leave to amend her Complaint, <u>consistent with this Memorandum Opinion and Order and only if she has a good faith basis to do so</u>, **by October 17, 2023**.   If Plaintiff is unwilling or unable to amend her complaint in such a way as to avoid dismissal, she must file a written notice stating as much **by October 17, 2023**. If Plaintiff files a written notice with the Court that she is unwilling or unable to amend

her complaint, the Court will dismiss this case and enter a final judgment without further notice.

## V.   Conclusion

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss.  Plaintiff's § 1983 claim for due process violation is: **dismissed without prejudice** against UTSW, **dismissed with prejudice** against the Individual Defendants, and **dismissed without prejudice** against the Official Defendants. Plaintiff's claims for violation of Title II of the Americans with Disabilities Act and for violation of Section 504 of the Rehabilitation Act are:  **dismissed with prejudice** against the Individual Defendants, and **dismissed without prejudice** against UTSW and the Official Defendants; and Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress are **dismissed with prejudice** against UTSW, the Official Defendants, and the Individual Defendants. The Court **DENIES** the Motion to Dismiss Plaintiff's claims against Defendants Erin Sine and Jessica Spaniol on the affirmative defense of attorney immunity.

**SO ORDERED.**

Signed September 29th, 2023.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE